# WM. H. A. HAMILTON *vs.* W. BURNS TRUNDLE.

### *Costs—Counsel Fees.*

It was adjudged by this Court, in an equity proceeding for the construction of one clause of a will, that a legacy to certain parties had not been adeemed by what had taken place after the execution of the will, and the decree of this Court remanding the cause directed the costs to be paid out of the testator's estate. *Held,* that the equity Court has no authority to order the executors to pay a fee to the counsel for the legatees for his services out of the testator's estate, which was being administered in the Orphans' Court and not in the equity Court.

No counsel fee, except the appearance fee, is ever included in the taxed costs of a case, unless there be some special statute authorizing it.

Appeal from Circuit Court No. 2 of Baltimore City (SHARP, J.)

The cause was argued before McSHERRY, C. J., FOWLER, PAGE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*Wm. H. A. Hamilton* and *Edwin J. Griffin* (with whom was *S. John Lion* on the brief), for the appellant.

*W. Burns Trundle,* appellee, *pro se.*

BOYD, J., delivered the opinion of the Court.

This is an appeal from an order of Circuit Court No. 2, of Baltimore City, allowing the appellee a counsel fee for services in this Court and in the Court below in the case of *Joynes et al.,* v. *Hamilton et al.,* decided at the January Term, 1904, of this Court, 98 Md. 665. It was a special case stated, under the provisions of Art. 16, secs. 184, etc., of the Code. The controversy there was a construction of the eighth clause of the will of William Hamilton and the codicil to his will. By that clause the testator had left to Evelyn and Julia Joynes, his granddaughters, a lot of ground on Franklin street in Baltimore City. After the execution of his will, for a considera-

tion of $500 paid him, the testator leased a lot to a church, subject to a ground rent of $120 per annum, giving the church the right to redeem it at any time for the sum of $2,000, and by the codicil left the ground rent to his two granddaughters. Before his death the church redeemed the ground rent and the question was what interest, if any, the granddaughters had in the money received from it. The Court below determined that they had no interest in the $500 or the $2,000, and an appeal was taken to this Court. We held that under the codicil the granddaughters had no right to the $500, but that there was no ademption of the legacy and they took the fund of $2,000, subject to the limitations expressed in the codicil. The decree was reversed and the cause remanded to the end that a decree might be passed in accordance with the opinion—"the costs to be paid by the executors out of the estate."

A decree was passed by the Court below on March 16th, 1904, declaring that these granddaughters were entitled to the benefit of the $2,000 with such interest as the executors received thereon after the end of one year from the death of the testator, and the executors were directed to invest the principal of said fund, subject to the limitations expressed in the codicil. The decree concluded "and it is further ordered that said executors pay all the costs of this suit out of the estate of said deceased." On the 18th of March, the appellee filed his petition asking for a fee. The executors answered alleging that they had paid all the taxable Court costs in the lower Court and this Court, that the Court had no jurisdiction over the funds as said estate was being administered by the Orphans' Court of Baltimore City, and that the services rendered by the appellee were not for the executors or the estate, but he was employed by persons antagonistic to the estate and those from whom he now seeks compensation. The case was heard on petition and answer.

Under the view we take of the case it will be unnecessary to consider all of the questions raised, as we are of the opinion that the lower Court had no power to require the executors to

pay the fee. The petition alleges that the estate of William Hamilton was worth more than fifty thousand dollars. Circuit Court No. 2 did not take jurisdiction of the settlement of the estate, and so far as appears from the record had nothing whatever to do with it, excepting to determine the questions raised by the special case stated, with reference to the proceeds of the sale of this lot—the $500 paid when the lease was made and the $2,000 paid when it was redeemed. That Court and this determined that the Misses Joynes had no interest whatever in the $500 and it is difficult to understand how there could be any question about that, and after the case was reversed the Circuit Court by its decree expressly ordered the two thousand dollars to be invested subject to the limitations in the codicil. In short, the decree of the Court disposed of all the funds of the estate it took jurisdiction of.

The provision in the decree that the executors "pay all the costs of this suit out of the estate of said deceased" presumably was not intended to mean more than what the decree of this Court provided for, when it said, "the costs to be paid by the executors out of the estate," for we had already disposed of the question of costs. It cannot be successfully contended that such a decree includes anything more than the costs which are taxed in the case. No attorney fee is ever included in the taxed costs, excepting the appearance fee, unless there be some special statute authorizing it. When executors or administrators are parties to suits, either at law or in equity, they like other parties may, by reason of the result of the case or by direction of the Court when it has the disposition of the costs, be required to pay them, but those are the *taxed* costs. In this Court it is frequently added to a decree that the executors, trustees, or other fiduciaries pay the costs out of the estate, and it is sometimes done so as to provide against their paying them individually, as may be required when the Court is of the opinion that they should be so held responsible. It has been distinctly decided by this Court in several cases that "the costs of a suit do not, apart from statutory direction, include the counsel fees of the successful party." In *Singer* v.

*Fidelity and Deposit Co.*, 96 Md. 221, that statement of the rule was repeated and it was said of the fee provided for under sec. 315 of Art. 4 of the Local Code (Baltimore City), that "The fee is a special allowance made upon particular grounds and is not part of the costs of the suit in the ordinary sense." That section authorizes the Court to allow the plaintiff *"in addition to the costs of the suit* reasonable counsel fees," not less than $25 nor more than $100, when he recovers any portion of his demand disputed, under the "Practice Acts" in force in that city.    It is therefore clear that this fee could not be allowed merely by reason of the decree of this Court, or that of the Court below.

It is also apparent that there is no statute authorizing a Court of equity to allow, as a part of the costs, counsel fees in a case of this kind.    Did it have the authority to order the payment of the fee out of the funds in the hands of the executors which were being administered in the Orphans' Court? The appellee has cited a number of cases outside of this State to the effect that when a will is so ambiguous as to make it necessary to go into a Court of equity to have it construed, costs including counsel fees will be allowed out of the general estate.    The only case in this State he cited on that subject was *Buchanan* v. *Lloyd*, 64 Md. 313.    In the opinion filed by CHIEF JUDGE ALVEY, after a petition had been filed asking the Court to declare what fund was meant when the Court directed the costs to "be paid out of the fund," he said "under the circumstances of this case the rule in regard to costs would seem to be well established.    That rule is, that whenever it is rendered necessary or proper, for determining the rights of parties, that the opinion of the Court should be taken as to the proper construction of the will, and the necessity for such resort has been occasioned by the doubtful or ambiguous terms employed by the testator, it is proper to award the cost against the residuary fund of the estate (*Wilson* v. *Brownsmith*, 9 Ves. 180; *Ripley* v. *Moysey*, 1 Keen, 578; *Jolliffe* v. *East*, 3 Bro. C. C. 25), and it was in view of the ambiguous nature of the clause of the codicil involved in this case that the cost was

awarded to be paid out of the fund." So far as appears from the report of that case the costs therein referred to were the ordinary Court costs, and did not include counsel fees, but assuming that they could be included in the rule therein announced, the difficulty in this case is that there was no fund under the control of the Circuit Court excepting the two thousand dollars, for if it can be said it at one time had jurisdiction over the $500, it did not retain it and, as we have seen, had passed a decree, in accordance with the direction of this Court, disposing of the $2,000. In *Buchanan* v. *Lloyd*, the fund in controversy was one amounting to $7,117.47. JUDGE ALVEY said "In directing the cost to be paid *out of the fund*, the fund intended to be charged was that in controversy, and none other; that fund being the only one, by the appeal, that was made subject to the decree of this Court." So in this case the only fund that was made subject to the decree of this Court, and the Court below, was the $2,000, which the Court below had fully disposed of before the petition of the appellee was filed, and it had no control over the rest of the estate which we have seen was being administered by the Orphans' Court. In the absence of a statute authorizing it, we can find no authority for a Court of equity thus requiring the executors to pay out of funds in their hands, under the control of the Orphans' Court, fees alleged to have been earned under such circumstances as are shown in this case. If it was proper for the executors to unite in the case, or they were required to do so, then the Orphans' Court was authorized to allow them reasonable counsel fees, but the Court below could not properly do so. And if the appellee is for the reasons alleged by him entitled to be paid out of the estate, he must apply to that Court. We purposely avoid passing on the question whether he is so entitled, or whether the Orphans' Court had the power to allow any fee, for as we are satisfied that the Court below had no authority to pass the order appealed from, we do not feel called upon to determine in advance questions that may be raised in another Court. For the reasons we have given we must reverse the order appealed from.

*Order reversed, the appellee to pay the costs.*

(Decided January 13th, 1905.)